UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORA MARIE HARTLOFF.,

                              Plaintiff,

                 v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

**DECISION AND ORDER**

1:18-CV-00836 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 11].[1] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [8, 11, 12], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 1,213-page administrative record [5] is presumed. The plaintiff filed applications for DIB and SSI on August 31, 2012. [5], pp. 209, 216. Plaintiff was last insured for DIB on December 31, 2012. [5], p. 230. She alleged a disability beginning on January 1, 2008. Id.

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Plaintiff's claims were initially denied. [5], pp. 120-27. An administrative hearing was held on January 17, 2014, but was adjourned so that plaintiff could retain counsel. *See* Transcript of Hearing, [5], pp. 107-13. Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Stanley A. Moskal, Jr. on May 13, 2014. *See* id., pp. 79-106. On August 6, 2014, ALJ Moskal issued a decision finding plaintiff not disabled. Id., pp. 64-73. Following an unsuccessful request for review with the Appeals Council (id., pp. 1-7), plaintiff initiated an action in this court (Hartloff v. Colvin, 16-cv-00251-EAW). That action was resolved on December 19, 2016 through a Stipulation and Order for Remand. Id., pp. 624-25.

Thereafter, the Appeals Council directed the ALJ to, *inter alia*, "give further consideration to the claimant's maximum residual functional capacity . . . and provide rationale with specific references to evidence of record in support of the assessed limitations". Id., p. 630. In addition, the ALJ was instructed to "evaluate the opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence." Id. Plaintiff's attorney submitted additional medical evidence to the Administration. *See* id., pp. 725-1188. ALJ Paul Georger conducted a third hearing on December 12, 2017, at which plaintiff and a vocational expert testified. *See* id., pp. 553-94. Thereafter, ALJ Georger ordered both medical and psychiatric consultative examinations. *See* id., pp. 1189-1200, 1206-1213. He issued his decision on April 24, 2018. Id., pp. 535-44.

**A.     ALJ Georger's RFC Determination**

ALJ Georger concluded that plaintiff was not disabled from January 1, 2008 through the date of his decision. Id., p. 544. He found that plaintiff's severe impairments were "fibromyalgia, degenerative disk disease of the cervical spine, [status post] discectomy and fusion surgery with instrumentation, cervical radiculopathy, chronic pain syndrome, and lumbar

spinal stenosis and migraine headaches".[2]  Id., p. 538.  ALJ Georger found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with some limitations:

> "[T]he claimant has the residual functional capacity to perform sedentary work . . . except lifting 10 pounds occasionally and less than 10 pounds frequently; carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours, standing for 2 hours, walking for 2 hours; push/pull as much as can lift/carry; can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, never crouch and crawl occasionally; she can never work at unprotected heights, never moving mechanical parts and never operating a motor vehicle."

Id., p. 541.

ALJ Georger found that the plaintiff's impairments could reasonably cause her alleged symptoms, but also that "the overall record supports a greater level of functioning" than plaintiff reported.  Id.  In support, ALJ Georger references various diagnostic studies, including abnormal MRI and EMG results, and findings upon examination.  Id., pp. 541-42.

Turning to the opinion evidence, ALJ Georger considered opinions of plaintiff's functional limitations from three sources: 1) consultative examiner Hongbiao Liu, M.D.; 2) Peter R. Kinkel, M.D., plaintiff's treating neurologist; and 3) consultative examiner Michael Rosenberg, M.D.  Id., pp. 542-43.  ALJ Georger assigned "great weight" to Dr. Liu's October 22, 2012 opinion.  Id., p. 542.  Dr. Liu found that plaintiff had a "mild limitation for prolonged walking, bending, kneeling, and overhead reaching."  Id., p. 405.  His report did not include specific functional limitations.  ALJ Georger found it significant that Dr. Liu's opinion was "based on actual findings upon examination", including a positive straight leg raise test, and limited squatting ability due to low back pain.  ALJ Georger also found Dr. Liu's opinion

---

[2] Neither plaintiff nor the Commissioner challenges ALJ Georger's findings concerning plaintiff's severe impairments.  ALJ Moskal previously found that plaintiff's severe impairments were "degenerative disc disease in the cervical and lumbar spines with radiculopathy, shoulder impairment, [and] hypertension".

consistent with his finding that plaintiff retained full strength in her lower extremities and walked with a normal gait and station.  Id., p. 542.

ALJ Georger assigned only "partial weight" to the opinion of plaintiff's treating neurologist, Dr. Kinkel.  Dr. Kinkel stated in October 28, 2015 correspondence that plaintiff's multiple medical conditions "combine to cause Ms. Hartloff significant pain in her cervical and lumbar spine" that "radiates into her right upper extremity, and her left lower extremity."  Id., p. 1035.  Dr. Kinkel opined that plaintiff's pain caused "a significant degree of impairment in her physical functioning".  Id.  Dr. Kinkel stated plaintiff was limited in her ability to lift greater than 5 pounds with either hand without significant pain, was unable to sit more than 10 to 15 minutes at a time, or for more than 4 hours out of an 8-hour work day, and could not walk or stand more than 10 minutes at one time, or more than 2 hours out of an 8-hour day.  Id.  In addition, Dr. Kinkel addressed the unpredictable nature of plaintiff's pain symptoms:

> "In addition, Ms. Hartloff has days in which her pain is flared.  On these days, her pain interferes with her concentration, and in her ability to perform even routine household activities.  On those days in which her pain is flared, there is no possibility that she could effectively carry out work tasks of any kind to the satisfaction of an employer.  It is my opinion that, on average, Ms. Hartloff would not be able to attend work on the days her pain is flared, and that this would occur more than four times per month."

Id.  Dr. Kinkel linked these limitations to abnormal findings on plaintiff's May 24, 2011 MRI, which "demonstrated a significant pathology in Ms. Hartloff's cervical spine", and stated that the limitations he described were "consistent with and caused [*sic*] the objective medical evidence found in Ms. Hartloff's medical records".  Id.

ALJ Georger found the limitations included in Dr. Kinkel's October 28, 2015 correspondence were not consistent with the diagnostic testing, including multiple examinations

-4-

revealing full strength in plaintiff's upper and lower extremities and findings that plaintiff walks with a normal gait and station.  Id., p. 543.

Finally, ALJ Georger assigned partial weight to the December 14, 2017 opinion of consultative examiner, Dr. Rosenberg. He found that Dr. Rosenberg's findings upon examination were consistent with other findings throughout the medical record, but that the record supported more significant functional limitations than those found by Dr. Rosenberg. ALJ Georger noted that Dr. Rosenberg did not make any reference to the plaintiff's prior fusion surgery in his diagnoses.  ALJ Georger found that plaintiff's fusion surgery and documented complaints of pain since 2010 supported his finding that plaintiff should be limited to lifting 10 pounds, rather than the 20 pounds suggested by Dr. Rosenberg.  Id.

ALJ Georger concluded:

"[T]he above residual functional capacity assessment is supported by overall evidence of record.  The claimant reports caring for her boyfriend's two daughters . . . .  During an earlier consultative examination the claimant had 5/5 strength in the upper and lower extremities with grip strength 5/5 bilaterally . . . .  A later consultative examination revealed 4+/5 strength . . . .  She is prescribed Tramadol but was hesitant to take anything stronger because she cares for her stepdaughter . . . .  Recent examination revealed 4+/5 strength in the upper extremities . . . .  Despite her long treatment history, her days are spent taking care of her grandchildren, watching TV and doing daily household routine activities . . . ."

Id.

Based upon the RFC and the vocational expert's testimony, ALJ Georger determined that plaintiff could perform her past work as an order clerk, and concluded, therefore, that plaintiff was not disabled.  Thereafter, this action ensued.

# ANALYSIS

## A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Georger erred by improperly evaluating the opinion evidence and failing to consider plaintiff's testimony concerning the limiting effects of her pain, caused by fibromyalgia. Plaintiff's Memorandum [8-1], pp. 1, 19-35. Specifically, plaintiff argues that ALJ Georger was required to evaluate an opinion from Dr. Kinkel's Physician Assistant, Aimee Larson. Id., pp. 20-24. PA Larson's January 4, 2017 treatment note stated, "I am uncertain Debora could work a job with any structure or full-time nature. Her conditions are unpredictable and would prevent her from working in most cases, on a regular basis." [5], p. 1151.

Next, plaintiff argues that ALJ Georger failed to properly evaluate Dr. Kinkel's functional opinion under the treating physician rule and did not provide good reasons for rejecting his opinion of plaintiff's limitations. Plaintiff's Memorandum [8-1], pp. 29-32. Plaintiff argues that a proper evaluation of Dr. Kinkel's opinion compels a finding that she is

disabled. Id., pp. 32-33. Finally, plaintiff argues that ALJ Georger failed to properly evaluate her testimony concerning the limiting effects of pain. Id., pp. 33-34.

In response, the Commissioner argues that ALJ Georger was not required to specifically address PA Larson's statement because she is not an acceptable medical source, and her statement concerning plaintiff's ability to work was equivocal and vague. Commissioner's Brief [11], pp. 17-18. In any event, the Commissioner points out that ALJ Georger did consider PA Larson's opinion, as he cited it several times in his opinion, and was entitled to reject it because it was undermined by plaintiff's "robust activities of daily living". Id., pp. 18-19. The Commissioner also argues that ALJ Georger properly evaluated Dr. Kinkel's opinion, and articulated good reasons for assigning it partial weight, including that it conflicted with the diagnostic testing, other objective medical evidence, and other opinion evidence (most notably, Dr. Liu's opinion). Id., pp. 19-23. Finally, the Commissioner argues that ALJ Georger properly evaluated plaintiff's subjective complaints and correctly pointed out that "the totality of the medical evidence did not corroborate Plaintiff's subjective symptomatology to the disabling extent she alleged", and that plaintiff's activities of daily living conflicted with the degree of impairment plaintiff claimed. Id., pp. 23-25.

**B.     Did ALJ Georger Err by Failing to Assess PA Larson's Opinion?**

I agree with the Commissioner that ALJ Georger was not required to address PA Larson's January 2017 statement that she was "uncertain Debora could work a job with any structure or full-time nature. Her conditions are unpredictable and would prevent her from working in most cases, on a regular basis". [5], p. 1151. Social Security Ruling ("SSR") 06-03P

(2006)[3] states that the same factors used to consider opinions from "acceptable medical sources" will be used to examine evidence from medical sources who are not "acceptable medical sources", such as physician assistants. SSR 06-03P, pp. *2, *4. "However, even if an ALJ must consider relevant, other evidence . . . the ALJ is not required to discuss every individual piece of information submitted as evidence." Spaich v. Berryhill, 2017 WL 6014451, *5 (W.D.N.Y. 2017). "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

As an initial matter, ALJ Georger was entitled to reject PA Larson's equivocal opinion because it does not provide any information concerning plaintiff's functional limitations. It expresses uncertainty about plaintiff's ability to work and states that her conditions would prevent plaintiff from working in "most" cases. Absent is any opinion concerning plaintiff's ability to perform the functional activities required of work, such a sitting, standing, reaching, etc. The Second Circuit has stated that vague opinion statements are "useless" to evaluate whether a plaintiff can perform sedentary work. Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (*superseded by statute on other grounds* as stated in Selian v. Astrue, 708 F.3d 409 (2013)); *see also* 20 C.F.R. §§404.1527 and 416.927 (statement by a medical source that a plaintiff is "disabled" or "unable to work" are examples of "opinions on issues reserved to the Commissioner").

---

[3] SSR 06-03P was rescinded for claims filed on or after March 27, 2017. *See* 82 F.R. 15263-01, 2017 WL 1105348 (F.R.) (March 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017"). Plaintiff filed this claim on August 31, 2012.

PA Larson's statement that she was "uncertain" whether plaintiff could perform work and that plaintiff's conditions would prevent plaintiff from working in "most" cases provides no useful information upon which ALJ Georger could base a determination whether plaintiff could – or could not – perform the functional requirements of sedentary work.[4] *See* Curry, 209 F.3d at 123.

Further, ALJ Georger's Decision demonstrates that he did consider PA Larson's opinion in the context of his RFC analysis. PA Larson's January 4, 2017 treatment note, in which her opinion appeared, was the only document included in exhibit 37F of the administrative record. [5], pp. 1148-51. ALJ Georger cited to PA Larson's treatment note by exhibit number at least twice in his RFC analysis. *See* [5], pp. 542 (final paragraph), 543 (first paragraph). Moreover, the information in PA Larson's treatment note is duplicative of Dr. Kinkel's more detailed October 28, 2015 opinion.

Accordingly, I find that PA Larson's opinion was not entitled to further analysis.

## C.  Did ALJ Georger Err by Rejecting Dr. Kinkel's Opinion?

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).[5] If the treating physician's opinion does not meet this standard, the ALJ may

---

[4] For the same reason, I believe Dr. Liu's opinion, merely stating that plaintiff has a "mild limitation for prolonged walking, bending, kneeling, and overhead reaching" is similarly insufficient to support the detailed RFC findings made by ALJ Georger. *See* Curry, 209 F.3d at 123 ("use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work"). However, plaintiff did not raise this argument as a basis for her motion.

[5] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v.

discount it, but is "required to explain the weight it gives to the opinions of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2) . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the "[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008) (*citing* 20 C.F.R. 404.1527(d), now (c)). Plaintiff argues that ALJ Georger failed to apply the analysis required by the treating physician's rule, and to give "good reasons" for rejecting Dr. Kinkel's opinion. Plaintiff's Memorandum [8-1], pp. 25-32.

I agree that ALJ Georger's Decision fails in both respects. ALJ Georger's discussion of Dr. Kinkel's opinion states, in its entirety:

> "The opinion of Dr. Kinkel, MD is assigned partial weight (28F)[6]. The actual diagnoses are consistent with the medical record; however, the restrictions suggested are not consistent with the diagnostic testing. For example, Dr. Kinkel limited the claimant to lifting more than 5lbs with either hand; but, multiple examinations revealed 5/5 strength in the upper extremity (8F3; 28F2; 36F3). Dr. Kinkel also limited the claimant to walking or standing for no more than 10 minutes at one time; but examinations reveal 5/5 strength in the lower extremities and the claimant walks with a normal gait and station (8F3; 37F3)."

---

Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019). This claim was filed on August 31, 2012. [5], pp. 209, 216.

[6] ALJ Georger's references correspond to medical evidence in the administrative record labeled as exhibits 28F (Dr. Kinkel's October 28, 2015 correspondence); 8F (Dr. Liu's October 22, 2012 report); 36F (July 14, 2017 treatment note of treating physician Rajiv Jain, M.D.); and 37F (PA Larson's January 4, 2017 treatment note).

[5], p. 543. First, aside from consistency of the opinion with other records, ALJ Georger did not address any of the factors required by the Administration's own regulations and the Second Circuit. Nowhere does ALJ Georger refer to the length of the treating relationship plaintiff had with Dr. Kinkel and PA Larsen of his office. ALJ Georger does not refer to Dr. Kinkel's specialty. Nor does ALJ Georger refer to the medical imaging available in the administrative record, even though Dr. Kinkel refers specifically in his October 28, 2015 opinion to the May 24, 2011 MRI, and states more generally that plaintiff's limitations are "consistent" with the "objective medical evidence" found in plaintiff's medical records. Other MRI reports are available in the record documenting subsequent MRIs of plaintiff's cervical spine on August 14, 2012, April 23, 2013, August 12, 2015, and May 31, 2016, and of her lumbar spine on November 5, 2014.

Further, the examples that ALJ Georger cites to demonstrate the inconsistencies he found between Dr. Kinkel's opinion and other evidence in the record are insufficient. The examples provided are not inconsistent on their face with the limitations outlined in Dr. Kinkel's report. However, ALJ Georger offers no additional explanation. Dr. Kinkel states that both plaintiff's "multiple medical conditions *and her resulting pain* cause a significant degree of impairment in her physical functioning". [5], p. 1035 (emphasis added). He opined that plaintiff "is unable to lift more than 5 pounds with either hand without significant pain." Id. ALJ Georger states that this limitation is inconsistent with the "multiple examinations" that "revealed 5/5 strength in the upper extremity."

Nowhere does ALJ Georger explain why or how plaintiff's 5/5 strength translates into the ability to lift, without pain, any object weighing greater than 5 pounds. Notably, both the reports that ALJ Georger cites (Exhibits 8F, report of Dr. Liu, [5], p.404; and 36F, treatment

-11-

note of Dr. Jain, [5], p. 1147) also document decreased range of motion in plaintiff's cervical spine and include a primary diagnosis of neck pain. Dr. Liu's primary diagnosis is "chronic neck and low back pain". *See* [5], pp. 404-05. Dr. Jain's primary diagnosis is "cervicalgia". Id., p. 1147. Decreased range of motion coupled with diagnoses indicating pain appear to be consistent with, rather than contrary to, Dr. Kinkel's opinion that plaintiff is significantly limited in her ability to lift. Neither Dr. Liu nor Dr. Jain outline any specific functional limitations in their reports, but Dr. Liu agrees that plaintiff has some limitation. *See* [5], p. 405 ("In my opinion, the claimant has mild limitations for prolonged walking, bending, kneeling, and overhead reaching"). ALJ Georger's examples concerning "5/5 strength in the lower extremities" and notations that "claimant walks with a normal gait and station" suffer the same deficiency. [5], p. 543. Nowhere does ALJ Georger explain why or how these findings are "not consistent" with Dr. Kinkel's opinion that plaintiff "cannot walk or stand more than 10 minutes at a time, or more than 2 hours out of an eight hour day", and is "unable to sit more than 10-15 minutes at a time, or for more than 4 hours out of an eight hour day". [5], p. 1035.

Because these are the only reasons ALJ Georger gives to support his rejection of Dr. Kinkel's opinion of plaintiff's functional limitations, ALJ Georger's analysis is incomplete. Accordingly, he has failed to provide "good reasons" for his rejection of that opinion. Lastly, ALJ Georger did not address Dr. Kinkel's opinion that plaintiff "would not be able to attend work on the days her pain is flared, and that this would occur more than four times per month". [5], p. 1035. Neither of the other opinions discussed by ALJ Georger commented upon the effect pain might have upon plaintiff's ability to attend work on a regular, daily basis. This detail is important because the vocational expert testified that an employer would not tolerate "more than once [*sic*] absence per month and during the probationary time, no absences would be tolerated."

[5], p. 592. ALJ Georger's failure to offer any explanation for his rejection of this portion of Dr. Kinkel's opinion fell short of the requirement that he provide "good reasons" for that rejection. ALJ Georger has therefore failed to comply with the Commissioner's own regulations, Second Circuit case law, and the Appeals Council's direction to "evaluate the opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence." [5], pp. 535, 630.

**D.     Should this Case be Remanded for a Calculation of Benefits?**

Plaintiff requests that I remand this case for calculation of benefits. Plaintiff's Memorandum [8-1], pp. 34-35. Where "no useful purpose would be served . . . by a remand", a court may remand for a calculation of benefits. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Hence, "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose". Harry L. v. Commissioner of Social Security, 2019 WL 3937224, *5 (N.D.N.Y. 2019), adopted, 2019 WL 3934952 (N.D.N.Y. 2019). "Though a district court has discretion to do so, remanding solely for the calculation of benefits is considered an 'extraordinary action'". Catsigiannis v. Astrue, 2013 WL 2445046, *5 (E.D.N.Y. 2013). *See* Simpson v. Saul, 2019 WL 4183912, *8 (W.D.N.Y. 2019) (denying request for a remand for a calculation of benefits where it was the third action seeking judicial review of the Commissioner's denial of coverage, but the record was not so obvious as to call for finding of disability). Since I am in no better position than ALJ Georger to conduct a proper analysis of Dr. Kinkel's opinion of plaintiff's functional limitations, I cannot conclude that remanding this case would serve no useful purpose. *See* Burgess, 537 F.3d at 130 ("we vacate and remand for further consideration because, given the evidence discussed . . . above as to the condition of Burgess's

-13-

back, the ALJ failed to give good reasons for not crediting Dr. Smith's opinion"); *see also* Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("[w]e therefore remand this case to the Appeals Council for a statement of the reasons on the basis of which Dr. Cooley's finding of disability was rejected").

However, I am mindful that this will be the second remand from this court for further proceedings on the same issue. And, these claims were filed seven and a half years ago, on August 31, 2012. [5], pp. 209, 216. Courts have recognized that "disability determinations are 'often painfully slow' and 'a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay.' . . . Understanding the continued hardship faced by the claimant, courts have seen fit to impose deadlines on the Commissioner to make final decisions." Urena v. Berryhill, 2019 WL 1748131, *16 (S.D.N.Y. 2019).

Therefore, the ALJ shall complete all further administrative proceedings within 120 days of this Decision and Order and if, upon remand, the ALJ denies the claim, the Commissioner shall issue a final decision within 60 days of any appeal from that denial. Urena, 2019 WL 1748131 at *16; Harry L. v. Commissioner of Social Security, 2019 WL 3937224, *8 (N.D.N.Y.), adopted, 2019 WL 3934952 (N.D.N.Y. 2019).

Finally, because this matter is remanded for further analysis and evaluation, I do not reach plaintiff's remaining arguments concerning the ALJ's credibility determination. Plaintiff's Memorandum [8-1], pp. 33-34. Discussion of this issue would be premature, as ALJ Georger's analysis of plaintiff's testimony may be affected by any new findings or analysis following remand. [7]

---

[7] *See, e.g.*, Hardy v. Commissioner of Social Security, — F.Supp.3d —, 2020 W.L. 392040, *7 (S.D.N.Y. 2020) ("[a]s to the other arguments challenging the evaluation of her subjective symptoms, . . . we do not believe it necessary to address them here inasmuch as they may be affected by any new findings or analysis following remand"); Webb v. Colvin, 2013 WL 5347563, *6 (W.D.N.Y. 2013) ("[r]esolution of

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [11] is also denied.

**SO ORDERED**.

Dated: March 17, 2020

           /s/ Jeremiah J. McCarthy
     JEREMIAH J. MCCARTHY
     United States Magistrate Judge

---

the issues discussed above may affect Plaintiff's remaining contentions, therefore further comment at this time would be premature").